FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAR 14 2011

JAMES N. HATTEN, CLERK
By: R Bachelm  Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> GRANT D. ALLEN, JR. D/B/A THE GAME ROOM and JOHN DOES 1-5, <br><br> Defendants. | 1:10-cv-4258-WSD |

## OPINION AND ORDER

This matter is before the Court on Plaintiff J & J Sports Productions, Inc.'s ("Plaintiff") Motion for Default Judgment against Defendant Grant D. Allen, Jr. ("Defendant") [6].[1]

## I. BACKGROUND

Plaintiff claims that Defendant violated 47 U.S.C. § 605 and § 553 of the Communications Act of 1934, as amended, by unlawfully intercepting, receiving,

---

[1] The Court dismisses sua sponte Defendants John Does (1-5). Fictitious party pleading is not permitted in federal court, unless Plaintiff describes the defendants with enough specificity to determine their identities. Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). Plaintiff has not made any attempt to amend the complaint or substitute the proper parties, and dismissal is appropriate.

and exhibiting *Oscar De La Hoya v. Manny Pacquiao – Welterweight Championship Fight Program* (the "Program").

Plaintiff owned the exclusive television distribution rights to the Program. (Compl. ¶ 8.) Commercial establishments could show the Program to their patrons if they were contractually authorized by Plaintiff to do so. (See id. at ¶ 9.)

On December 6, 2008, Philip R. Brooks, an investigator hired by Plaintiff, visited Defendant's establishment, The Game Room, located at 1326 Moreland Avenue, Atlanta, Georgia. (Brooks Aff.) The Game Room had not contracted with Plaintiff to show the Program. (Pl.'s Aff. ¶ 7.) Brooks did not pay a cover charge to enter the establishment. (Brooks Aff.) Once inside, Brooks observed the Program being shown on four (4) television sets. (Id.) Brooks recorded that the maximum occupancy of the establishment was 15 people, and counted between ten (10) and eighteen (18) patrons present. (Id.).

Another investigator hired by Plaintiff, Bernard Brown, visited The Game Room that same evening. (Brown Aff.) Brown did not pay a cover charge to enter the establishment, and once inside he also observed the Program being shown on four (4) television sets. (Id.) He estimated the maximum capacity of the establishment at one hundred (100) to one-hundred twenty (120) people, and counted between twenty-six (26) and twenty-eight (28) patrons in attendance.

On December 30, 2010, Plaintiff filed its Complaint [1], alleging two counts: (1) unauthorized reception and publication of satellite transmissions in violation of 47 U.S.C. § 605, or, alternatively, (2) unauthorized reception and publication of cable service in violation of 47 U.S.C. § 553. On January 18, 2011, Plaintiff served Defendant with its Complaint. As of the date of this Order, Defendant has not answered or otherwise responded to Plaintiff's Complaint.

On February 10, 2011, Plaintiff filed its Motion for Clerk's Entry of Default against Defendant, and, on that same day, the Clerk issued an entry of default. On February 25, 2011, Plaintiff moved for default judgment.

## II.   DISCUSSION

### A.   The Standard on Default Judgment

Rule 55(b) of the Federal Rules of Civil Procedure provides:

> (b) Entering a Default Judgment.
> (1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> (2) *By the Court.* In all other cases, the party must apply to the court for a default judgment . . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:

3

>       (A) conduct an accounting;
>       (B) determine the amount of damages;
>       (C) establish the truth of any allegation by evidence; or
>       (D) investigate any other matter.

Fed. R. Civ. P. 55(b). "The entry of a default judgment is committed to the discretion of the district court . . . ." Hamm v. DeKalb County, 774 F.2d 1567, 1576 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986) (citing 10A Charles Alan Wright, et al., Federal Practice & Procedure § 2685 (1983)). "In considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint." Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988).

    B.    <u>47 U.S.C. § 605 and 47 U.S.C. § 553</u>

In its Complaint, Plaintiff seeks relief under two different statutory provisions – 47 U.S.C. § 605, or, alternatively, 47 U.S.C. § 553.[2] Section 605 provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign

---

[2] Plaintiff can only recover under one statute. See TKR Cable Co. v. Cable City Corp., 267 F.3d 196 (3d Cir. 2001) (holding that a defendant cannot be held liable under § 605 and § 553 for the same conduct); J & J Sports Prods., Inc. v. Blackwell, 2009 U.S. Dist. LEXIS 62240, at *5 (M.D. Ala. July 21, 2009).

> communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).[3] Section 553 prohibits "intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Id. at § 553(a)(1).

There is a split among the circuits as to what activity each section covers and how to reconcile potential overlap in the provisions.[4] Some circuits have held that § 605 applies to satellite transmissions and cable programming transmitted over a cable network. See Int'l Cablevision v. Sykes, 75 F.2d 123 (2nd Cir. 1996) (holding that both § 605 and § 553 cover interception of cable programming transmitted over a cable network). Other circuits have held that only § 553 covers cable programming transmitted over a cable network. See TRK Cable Co. v. Cable City Corp., 267 F.3d 196 (3d Cir. 2001) ("§ 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior or not in connection with, distribution of the service over a cable system,' and

---

[3] Satellite signals are considered "radio communication." Scientific-Atlanta, Inc. v. Fenley, 1997 U.S. Dist. LEXIS 22700, at *35 (N.D. Ga. Jan. 14, 2007) (citing United States v. Howard, 13 F.3d 1500, 1501 (11th Cir. 1994)).
[4] The Eleventh Circuit has not addressed this issue.

5

no more. Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605."); see also United States v. Norris, 88 F.3d 462, 466 (7th Cir. 1996) (affirming district court's finding that "where cable programming is broadcast through the air and then retransmitted by a local cable company over a cable network, § 605 should govern the interception of the satellite or radio transmission through the air, while § 553(a) should govern the interception of the retransmission over a cable network"). The Court is persuaded by the Third and Seventh Circuit's interpretation of § 605's plain language, and finds that § 605 prohibits commercial establishments from intercepting and broadcasting satellite programming, while § 553 addresses interceptions that occur through a cable network. See Scientific-Atlanta, 1997 U.S. Dist. LEXIS 22700; CSC Holdings, Inc. v. Kimtron, Inc., 47 F. Supp. 2d 1361 (S.D. Fla. 1999).[5]

Plaintiff does not allege in its Complaint or Motion for Default Judgment whether the Program was illegally obtained and broadcast through the interception of satellite or cable transmissions. Plaintiff instead states that Defendant "could only lawfully obtain the Program if Plaintiff had contracted with the Defendant

---

[5] Plaintiff appears to accept this interpretation as well. (Mem. Supp. Mot. Default J. 4 ("The majority of the Courts have found that Section 605 applies to cases where the end-user offender obtained a proprietary broadcast by way of a satellite (rather than cable) television programming system.").)

[and] this lawful approach was not taken.  Therefore, Defendant must have undertaken specific wrongful actions to intercept and/or receive and broadcast the encrypted telecast." (Mem. Supp. Mot. for Default J. 5.)

In this circumstance, the Court elects to "giv[e] Plaintiff the benefit of the doubt" and "not fault[] Plaintiff for failing to plead the particular manner of interception since this may be exclusively in Defendant['s] knowledge." See J & J Sports Prods. v. Gallegos, 2008 U.S. Dist. LEXIS 61066, at *7-8 (D.N.J. Aug. 5, 2008).  The Court finds that Plaintiff has alleged and presented sufficient evidence that Defendant violated the common elements of both § 605 and § 553.  Plaintiff has alleged and provided evidence that Defendant intercepted the Program, Defendant did not pay for the right to receive the transmission, and Defendant displayed the broadcast to patrons of its establishment.

C.   Damages

The Court may only award damages for default judgment without a hearing if "the amount claimed is a liquidated sum or one capable of mathematical calculation." Adolph Coors Co. v. Movement Against Racism and the Klan, 777 F.2d 1538, 1543 (11th Cir. 1985).  Under such circumstances, the record must "adequately reflect[] the basis for award via . . . demonstration by detailed affidavits establishing the necessary facts." Id. at 1544.  "[A] plaintiff must also

7

establish that the amount is reasonable under the circumstances." Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).

Under § 605, a court may award statutory damages between $1,000 and $10,000 for each violation, 47 U.S.C. § 605(e)(3)(C)(i)(II), and if a violation is "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," a court may award up to an additional $100,000, id. at § 605(e)(3)(C)(ii). Under § 553, a court may grant statutory damages between $250 and $10,000 per violation, id. at § 553(c)(3)(A)(ii), and up to $50,000 may be awarded if the court finds that the act was violated "willfully and for purposes of commercial advantage or private financial gain," id. at § 553(c)(3)(B). In addition to damages, both § 605 and § 553 provide that a court shall award the plaintiff full costs of bringing an action, including reasonable attorneys' fees. Id. at § 605(e)(3)(B)(iii), § 553(c)(2)(C).

Plaintiff seeks $10,000 for the violation of § 605(e)(3)(C)(i)(II) and $10,000 for the violation § 553(c)(3)(A)(ii)). Plaintiff also asks the Court to add enhanced damages of up to $100,000 for Defendant's willfulness, pursuant to § 605(e)(3)(C)(ii).

The difference in the authorized range of statutory damages permitted by § 605 and § 553 is immaterial here, because the Court declines to award the

minimum or maximum amount of statutory damages under either section. The starting point for Plaintiff's statutory damages is $2,200.00, because that is what Defendant would have had to pay, at a minimum, to legitimately purchase the right to broadcast the Program. (See Pl.'s Aff. ¶ 8.)[6] The Court also concludes that statutory damages will deter others from unlawful broadcasts. The Court determines that statutory damages of $5,000 is an appropriate award in this case because the Program was shown on multiple television sets and because the Defendant had to undertake affirmative and willful steps to intercept and illegally broadcast the Program. See Blackwell, 2009 U.S. Dist. LEXIS 62240, at *7-8 (awarding $2,500 in statutory damages).

The Court further finds that Plaintiff is entitled to its attorneys' fees and costs incurred. Plaintiff shall submit an application for attorneys' fees and costs within fourteen (14) days from the filing of this Order.

---

[6] There is a discrepancy between Plaintiff's investigators' reports of the The Game Room's occupancy. Brooks stated that the capacity was 15 and Brown stated the occupancy was 100-120. (Brooks aff.; Brown aff.) The rate is $2200 for venues that seat less than 100 people, and $4200 for venues seating between 101 and 200. Because the average of Plaintiff's reported capacities for The Game Room is 65, and because the higher estimate is right at the dividing line between the higher and lower charge, the Court adopts $2200 as the likely fee for The Game Room to broadcast the Program.


## III. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff J & J Sports Productions, Inc.'s Motion for Default Judgment against Defendant Grant D. Allen [6] is **GRANTED**, as outlined by the terms of this Order. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff against Defendant for $7,200 in statutory damages.

**IT IS FURTHER ORDERED** that Plaintiff shall submit an application for attorneys' and costs within fourteen (14) days of the entry of this Order.

**SO ORDERED** this 14th day of March, 2011.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE